UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NICOLE BREITFELLER, et al.,**

    **Plaintiffs,**

v.                                                Case No.  8:05-cv-405-T-30TGW

**PLAYBOY ENTERTAINMENT GROUP,
INC., et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants Deslin Inc. d/b/a Desert Resort Motel, Irene Devlin and Dennis Devlin's (hereinafter "Defendants") Motion for Summary Final Judgment (Dkt. 273) and Plaintiffs' Response in Opposition to the same (Dkt. 308).  For the foregoing reasons, this Court finds Defendants' Motion is **GRANTED in part and DENIED in part**:

### FACTUAL BACKGROUND[1]

Plaintiffs, in the early part of March 2001, traveled to Daytona Beach to enjoy their spring break from high school.  At the time of their trip, Plaintiffs were seventeen years of age (nearly eighteen).[2]

---

[1] With some exceptions, Plaintiffs do not dispute the accuracy of the facts presented by Defendants (Dkt. 308 at 2). (It should be noted that the facts contained in Defendants' Motion are those facts presented by Defendant Playboy in its individual Motion for Summary Judgment, and are incorporated by reference). Accordingly, those facts contained in this Order are undisputed.

[2] Plaintiff Gautreaux's eighteenth birthday was March 21, 2001, while Plaintiff Brietfeller's eighteenth birthday was September 11, 2001.

**Plaintiff Breitfeller's trip to Daytona**.

Plaintiff Breitfeller drove to Daytona by herself on a Sunday afternoon and stayed in a hotel room she shared with four other young women. On Monday, Breitfeller and the other young women visited the Desert Inn to watch the wet t-shirt contest, which started at 4:00 pm. According to Breitfeller, the wet t-shirt contest was the "thing to do" in Daytona during spring break. (Breitfeller depo. at 70). The contest lasted for one hour and while there, Breitfeller witnessed people videotaping the contest.

The next day, Breitfeller and friends drank alcohol in their hotel room[3] and joked about entering the wet t-shirt contest at the Desert Inn. After drinking in their hotel room, Breitfeller and her friends traveled to the Desert Inn to see the wet t-shirt contest. Once they arrived, Breitfeller saw two of her friends (Tamika Badillo and Paulina Campos) participating in the contest. Initially apprehensive about participating, upon being encouraged by her friends to do so, Breitfeller decided to enter the contest.

**Plaintiff Gautreaux's trip to Daytona.**

Plaintiff Gautreuax traveled to Daytona with two of her friends and shared a hotel room with three other women. On the second day of her trip, while walking on the beach, a young man approached Gautreaux, told her about the wet t-shirt contest, commented on her attractiveness, indicated there was a one hundred dollar ($100.00) prize and suggested she enter. Subsequent to this conversation, Gautreaux walked to the Desert Inn and asked the

---

[3] According to Breitfeller, she and her friends took shots prior to leaving the hotel and continued drinking after they arrived at the Desert Inn. Breitfeller and her friends "did a lot of [their] drinking at the Desert Inn." (Breitfeller Depo. at 74).

VJ[4] when the wet t-shirt contest was to begin.  The VJ informed Gautreaux the contest would begin in one hour and suggested she come back because of the one hundred dollar prize. Gautreaux decided to enter the contest, and returned an hour later.

**The contest.**

After deciding to enter the contest, Plaintiffs reported backstage to prepare.  Once backstage, the emcee distributed white cotton t-shirts for the contestants to wear and instructed the contestants to cut off the bottom half of the t-shirts.  Both Plaintiffs testified that the emcee cut the t-shirts for them. While backstage, Breitfeller and her friends asked the emcee for more drinks and were provided large mugs of beer and mixed drinks, which Breitfeller and her friends shared.  Gautreaux also began consuming beer backstage.[5]

When the contests began, 10 to 15 women, including Plaintiffs, walked on stage and waited for the contest to begin.   The DJ began "getting the crowd[6] hyped up," and started playing "booty music"[7] while the contestants began to dance.[8]   To determine the winner, the

---

[4] While the term VJ is not defined in the Motion, this Court presumes VJ is synonymous with DJ or disc jockey.

[5] Gautreaux did not consume any alcoholic beverages prior to entering the contest, but recalls consuming one mug of beer backstage and another mug of beer on stage while participating in the contest. (Gatureaux depo. at 32)

[6] The crowd included those persons standing on the pool deck, hotel balconies and the public beach and had full view of the stage on which the contest was taking place.  According to Gautreaux, there were "a couple hundred people" watching the contest.  (Gautreaux depo. at 43).

[7] "Booty music" also known as Miami bass, is a type of hip hop music that became popular in the 1980s and 1990s and was largely based in Miami and other places in Florida .   The genre, which has a slightly higher dance tempo and occasional sexually explicit lyrical content, includes groups like 2 Live Crew.  See http://en.wikipedia.org/wiki/Bass_music.

[8] According to Plaintiffs, while they were dancing they saw people in the crowd with cameras and
(continued...)

emcee placed his hand over each contestant's head and awaited the crowd's response for that particular contestant. The three contestants with the loudest crowd response were considered the finalists and advanced to the final round, while the other contestants were eliminated. Plaintiffs, along with one other contestant, advanced to the final round, and participated in a dance off. Similar to the preceding round, the contestant with the loudest crowd response was declared the winner. Gautreaux won the contest and received the one hundred dollar prize and a Budweiser bikini. Breitfeller won second place and received approximately thirty dollars ($30).

Subsequent to Plaintiffs' participation in the contest, their images appeared in various videos, specifically, *Playboy Exposed: All American Girls* (a/k/a *Girls Gone Crazy Spring Break*), and *Playboy Exposed -Spring Break: Greatest Moments & Best of*.[9] Both videos accurately depict Plaintiffs' participation in the Contest during Spring Break 2001. As a result of the making and distribution of these videos, Plaintiffs filed this lawsuit.

---

[8](...continued)
video cameras who were either taking pictures of or videotaping the contest.

[9] In addition to the sea of video cameras Plaintiffs saw while participating in the contest, Paul Prewitt, a Defendant in this case, accumulated footage in Daytona during spring break 2001, including the wet t-shirt contest. It later sold this footage to New City Releasing, Inc. in October of 2001. The footage was then edited and compiled into a 55-minute program entitled *Girls Gone Crazy: Spring Break*. New City licensed the pay-per-view rights in the film to iN DEMAND, L.L.C., who made the programming available to paying customers until June 2002.

Lincolnwood Motion Pictures, L.L.C. licensed all rights, except pay-per-view, to Playboy Entertainment Group, Inc., who marketed the same film under the title, *Playboy Exposed: All American Girls* and released the video in February of 2002.

## **DISCUSSION**

**I.    SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  Id.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.   The evidence must be significantly probative to support the claims.  Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual

issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. LEGAL ANALYSIS

*A.    18 U.S.C. § 2251(a).*

Section 2251(a) of United States Code 18, entitled *Sexual Exploitation of Children*, reads in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished . . . if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed . . . or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

See 18 U.S.C. § 2251(a) (2006).

In Count I of the Fourth Amended Complaint, Plaintiffs allege that Deslin Hotels and the Devlins violated 18 U.S.C. § 2251(a) when they, through their agent GoldRush,[10]

---

[10] In reviewing the deposition transcripts of Irene Devlin and David Barton, there appears to be an issue of fact as to the relationship between GoldRush and Deslin Hotels, i.e. whether GoldRush was an agent of Defendants in 2001 or an independent contractor. Devlin testified that GoldRush was hired to entertain
(continued...)

persuaded, induced and enticed Plaintiffs to participate in the contests and to engage in sexually explicit conduct by providing them alcohol for the purpose of producing visual depictions of such conduct. (Dkt. 201). In order to establish liability, Plaintiffs had to present evidence that Defendants (1) employed, used, persuaded Plaintiffs, (2) to engage in sexually explicit conduct, (3) for the purpose of producing any visual depiction of the conduct. See id. In their Motion, Defendants argue that summary judgment is appropriate because there is no record evidence to support Plaintiffs' allegations. While doubt may exist whether Plaintiffs will prevail on the merits of this claim, they have presented issues of fact, specifically with regard to the issue of inducement,[11] that, at this time, preclude granting summary judgment in Defendants' favor.

        1.        Inducement to participate in the contest.

Both Plaintiffs have admitted that their decision to participate in the contest was either motivated by peer pressure (Breitfeller depo. at 73), or a decision they made on their own (Gautreaux depo. at 248-49). However, they have also presented testimony that they were enticed, persuaded or induced to participate based on other happenings. For example, Breitfeller testified that the emcees for the contest pulled her on stage prior to the contest (Breitfeller depo. at 72-73;77, 80), and when she attempted to walk off the stage one or two

---

[10](...continued)
the spring breakers on the hotel pool deck, and was at all times in control of the pool deck and the activities that occurred on the deck. However, Barton testified that GoldRush at no time had control over the pool deck or any activities that took place on the pool deck and those activities were dictated and controlled by the hotel.

[11] The term "inducement", or any form of the same, will be used by this Court to include the statutory terms, "entice", "persuade" and "induce."

times, the emcees grabbed her. Id. at 80. Additionally, Gautreaux testified that she entered the contest for the one hundred dollar cash prize (Gautreaux depo. at 30).[12] Whether Plaintiffs' decision to participate in the contest was of their own volition or a result of persuasion from Defendant is a determination is best left for a jury.

        2.        Inducement to engage in sexually explicit behavior.

Assuming a jury finds that Defendants induced Plaintiffs to participate in the wet t-shirt contest, liability cannot be found unless it is determined that Defendants induced Plaintiffs to engage in sexually explicit behavior. 18 U.S.C. §2256 defines "sexually explicit conduct" as: "[a]ctual or simulated . . .sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex . . . bestiality . . .masturbation. . .sadistic or masochistic abuse; or . . . lascivious exhibition of the genitals or pubic area of any person." See 18 U.S.C. § 2256(2)(A) (2006).

While the parties disagree whether Plaintiffs engaged in such behavior, neither party has submitted the promotional videos relevant to the claims against Defendants for this Court's review.[13] As such, this Court cannot make a determination (1) whether Plaintiffs' images are in the promotional videos, or (2) assuming Plaintiffs' images are shown, whether the conduct engaged in by Plaintiffs as shown in the promotional videos, constitutes sexually

---

[12] Whether Defendants can be held liable for Gautreaux's participation in the contest is a close question. Gautreaux testified that she was approached by a "random guy" who told her, "Hey, you know, you're hot, why don't you enter the contest, there's a hundred bucks up for grabs." (Gautreaux depo. at 22). Id. at 24, 26.

[13] The hotel's promotion video is not the same video footage taken by Paul Prewitt which later became a part of the Playboy videos. While Defendants note in footnote 2 that the DVD is attached as an exhibit to the deposition of Christopher Huddleston (Dkt. 273), no such DVD was filed.

explicit conduct, as defined in the statute. Accordingly, summary judgment as to Count I is **denied**.[14]

  B. *Common Law Negligence.*

In order to establish a claim for negligence, Plaintiffs must present evidence of (1) a legal duty on the part of the defendant; (2) a breach of that duty by defendant; (3) causation; and (4) damages suffered as a result of the breach. See Pinchinat v. Graco Children's Products, Inc., 390 F.Supp.2d 1141, 1149 (M.D. Fla. 2005). In Count II, Plaintiffs allege that Deslin Hotel had a duty not to provide alcohol to persons under the age of 21 (Dkt. 201 at 13) and not to permit minors to participate in the wet t-shirt contest. Id. Plaintiffs further allege that Deslin, through its authorized employees and agents, breached these duties when it provided alcohol to Plaintiffs and offered Plaintiffs cash prizes and other incentives to induce or entice them to participate in the wet t-shirt contest. (Dkt. 201 at 13). Deslin argues that while it does have a duty to prevent alcohol from being sold to persons under 21, no legal duty exists requiring them to prevent minors from participating in wet t-shirt contests. Specifically, Deslin argues that the harm suffered by Plaintiffs (video footage of their participation in the wet t-shirt contest) was not in the foreseeable zone of risk which would create privity between the parties.

---

[14] In addition to determining whether Defendants induced Plaintiffs to engage in sexually explicit conduct, a jury must also find that Defendants induced Plaintiffs to engage in sexually explicit conduct *for the purpose* of producing the promotional videos. While Defendants have admitted hiring GoldRush to film different activities taking place at the hotel during spring break for promotional purposes, Plaintiffs, at this juncture, have produced no evidence that they were induced to engage in *any* activity for the purpose of creating said videos.

While this Court generally agrees that a party has no duty to control the conduct of a third party, a duty may arise if the defendant is in actual or constructive control of: (1) the instrumentality of the harm; (2) the premises upon which the tort is committed; or (3) the person who committed the tort. See Aguila v. Hilton, Inc., 878 So.2d 392, 398 (Fla. 1st DCA 2004). As stated *supra*, an issue of fact exists as to whether Deslin or Goldrush, the company who emceed the contest, was in actual or constructive control of the pool deck and the wet t-shirt contest.

However, assuming that Deslin had a duty to prevent Plaintiffs from participating in the wet t- shirt contest, Deslin argues that neither this duty, nor their duty to prevent minors from consuming alcohol were breached. Deslin also argues they were not the cause of Plaintiffs' alleged damages, i.e., being videotaped participating in the wet t-shirt contest while they (Plaintiffs) were engaged in sexually explicit conduct. Deslin argues that any alleged damages suffered by Plaintiffs were caused by their own action as well as those persons who videotaped their performances.[15] While this Court agrees with Deslin's position, Plaintiffs have, during their depositions, alluded to the fact that the alcohol they consumed contributed to their performances during the wet t-shirt contest, such that, but for the alcohol, they would not have danced as provocatively on stage. The jury is the appropriate body to decide what effect, if any, the alcohol had on Plaintiffs' participation in the contest. Accordingly, summary judgment on Plaintiffs' claim for common law negligence is **denied**.

---

[15] While GoldRush has admitted to taping various contests which occurred on the pool deck during spring break, there is no evidence that Plaintiffs' images are contained in any of the video footage obtained by GoldRush. Moreover, there has been no evidence submitted that Plaintiffs' images are in the promotional footage used by Deslin., nor is there any evidence to the contrary. See footnote 12, *supra*.

### C. *Intentional Infliction of Emotional Distress.*

To prevail on a claim for intentional infliction of emotional distress, Plaintiffs had to produce evidence that (1) Deslin's actions were extreme and outrageous beyond all bounds of decency; (2) Deslin's actions were intentional; and (3) Deslin's actions caused Plaintiffs severe emotional distress. See State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So.2d 1210, 1212 (Fla. App. S. Dist. 1995). While the Fourth Amended Complaint alleges Deslin intentionally engaged in various instances of outrageous conduct, e.g. providing alcohol or permitting alcohol to be provided to Plaintiffs to reduce their inhibitions, persuading Plaintiffs to engage in sexually explicit conduct, and subjecting Plaintiffs to demeaning, inappropriate, exploitive and illegal conduct during the contests, which resulted in Plaintiff suffering from severe emotional distress (Dkt. 201 at 15), Plaintiffs have presented no evidence to support these allegations.[16] Summary judgment is therefore appropriate as to Count III of the Fourth Amended Complaint.

### D. *Unjust Enrichment.*

Plaintiffs' last claim against Deslin is unjust enrichment. Specifically, Plaintiffs allege that the videotapes at issue in the case, as well as Plaintiffs' participation in the contest itself conferred an economic benefit on Deslin. These economic benefits, according to Plaintiffs, include revenue obtained from admissions to the pool deck on the day of the contest, food and beverage sales on the pool deck during the contest, revenue generated from the sale and use of the videotapes, and the revenue generated from the advertising of the Desert Inn in the

---

[16] Despite the extreme emotional distress Plaintiffs allegedly suffered as a result of their participation in the contest, Plaintiffs participated in another wet t-shirt contest in Daytona in 2002.

videos of the Plaintiffs of the contest (Dkt. 201 at 16). In order to sustain a claim of unjust enrichment, Plaintiffs had to produce evidence that they conferred a benefit upon Deslin, Deslin appreciated the benefit and accepted and retained the benefit under circumstances that would make it inequitable for it to retain the benefit without paying for the benefit. See Swindell v. Crowson, 712 So.2d 1162, 1164 (Fla. 2nd DCA 1998). Plaintiffs have presented no evidence that any benefit conferred on Deslin was either appreciated or accepted. Any benefits Plaintiffs conferred to Deslin were done officiously and do not support a claim for unjust enrichment. See Hermanowski v. Naranja Lakes Condominium No. Five, Inc., 421 So.2d 558, 560 (Fla. 3rd DCA 1982). Summary judgment on Count IV is therefore appropriate.

It is therefore ORDERED AND ADJUDGED that Defendants' Deslin Inc. d/b/a Desert Resort Motel, Irene Devlin and Dennis Devlin's (hereinafter "Defendants") Motion for Summary Final Judgment (Dkt. 273) is **GRANTED in part and DENIED in part** as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on January 23, 2007.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\PLAYBOY\Motion for Summary Judgment -Deslin.frm