**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NICOLE BREITFELLER, et al.,**

    **Plaintiffs,**

v.                                                                                    Case No.  8:05-cv-405-T-30TGW

**PLAYBOY ENTERTAINMENT GROUP,**
**INC., et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon The Playboy Defendants'[1] (hereinafter "Playboy") Motion for Summary Final Judgment (Dkt. 232), Defendants Time Warner Entertainment-Advance/Newhouse Partnership and Cox Communications, Inc.'s Motion for Summary Judgment (Dkt. 272) and Plaintiffs' Responses in Opposition to the same (Dkts. 275,294). For the following reasons, this Court finds Defendants' Motions should be **DENIED**.

**FACTUAL BACKGROUND**[2]

Plaintiffs, in the early part of March 2001, traveled to Daytona Beach to enjoy their spring break from high school. At the time of their trip, Plaintiffs were seventeen years of

---

[1] The Playboy Defendants are Best Buy Company, Inc., Image Entertainment, Inc., iN DEMAND, L.L.C., Lincolnwood Motion Pictures, L.L.C., New City Releasing, Inc., Playboy Enterprises International, Inc., Playboy Enterprises, Inc., Playboy Entertainment Group, Inc., Playboy.com, Inc., and Trans World Entertainment, Corp.

[2] With some exceptions, Plaintiffs do not dispute the accuracy of the facts presented by Defendants (Dkt. 275). Accordingly, those facts contained in this Order are undisputed.

age (nearly eighteen).[3]

### **Plaintiff Breitfeller's trip to Daytona**.

Plaintiff Breitfeller drove to Daytona by herself on a Sunday afternoon and stayed in a hotel room she shared with four other young women. On Monday, Breitfeller and the other young women visited the Desert Inn to watch the wet t-shirt contest, which started at 4:00 pm. According to Breitfeller, the wet t-shirt contest was the "thing to do" in Daytona during spring break. (Breitfeller depo. at 70). The contest lasted for one hour and while there, Breitfeller witnessed people videotaping the contest.

The next day, Breitfeller and friends drank alcohol in their hotel room[4] and joked about entering the wet t-shirt contest at the Desert Inn. After drinking in their hotel room, Breitfeller and her friends traveled to the Desert Inn to see the wet t-shirt contest. Once they arrived, Breitfeller saw two of her friends (Tamika Badillo and Paulina Campos) participating in the contest. Initially apprehensive about participating, upon being encouraged by her friends to do so, Breitfeller decided to enter the contest.

### **Plaintiff Gautreaux's trip to Daytona.**

Plaintiff Gautreuax traveled to Daytona with two of her friends and shared a hotel room with three other women. On the second day of her trip, while walking on the beach, a young man, with no connection to any of the Defendants in this case, approached

---

[3]Plaintiff Gautreaux's eighteenth birthday was March 21, 2001, while Plaintiff Brietfeller's eighteenth birthday was September 11, 2001.

[4]According to Breitfeller, she and her friends took shots prior to leaving the hotel and continued drinking after they arrived at the Desert Inn. Breitfeller and her friends "did a lot of [their] drinking at the Desert Inn." (Breitfeller Depo. at 74).

Gautreaux, told her about the wet t-shirt contest, commented on her attractiveness, indicated there was a one hundred dollar ($100.00) prize and suggested she enter. Subsequent to this conversation, Gautreaux walked to the Desert Inn and asked the VJ[5] when the wet t-shirt contest was to begin. The VJ informed Gautreaux the contest would begin in one hour and suggested she come back. Gautreaux decided to enter the contest and returned an hour later.

**The contest.**

After deciding to enter the contest, Plaintiffs reported backstage to prepare. Once backstage, the emcee distributed white cotton t-shirts for the contestants to wear and instructed the contestants to cut off the bottom half of their t-shirts. According to Plaintiffs, the emcee cut the t-shirts for them. While backstage, Breitfeller and her friends asked the emcee for more drinks and were provided large mugs of beer and mixed drinks which Breitfeller and her friends shared. Gautreaux also began consuming beer backstage.[6]

When the contests began, 10 to 15 women, including Plaintiffs, walked on stage and waited for the contest to begin. The DJ began "getting the crowd[7] hyped up," and started playing "booty music"[8] while the contestants began to dance.[9] To determine the winner, the

---

[5]While the term VJ is not defined in the Motion, this Court presumes VJ is synonymous with DJ or disc jockey.

[6]Gautreaux did not consume any alcoholic beverages prior to participating in the contest, but recalls consuming one mug of beer backstage and another mug of beer on stage while participating in the contest. (Gatureaux depo. at 32)

[7]The crowd included those persons standing on the pool deck, hotel balconies and the public beach and had full view of the stage on which the contest was taking place. According to Gautreaux, there were "a couple hundred people" watching the contest. (Gautreaux depo. at 43).

[8] "Booty music" also known as Miami bass, is a type of hip hop music that became popular
(continued...)

emcee placed his hand above each contestant's head and awaited the crowd's response for that particular contestant. The three contestants with the loudest crowd response were considered the finalists and advanced to the final round, while the other contestants were eliminated. Plaintiffs, along with one other contestant, advanced to the final round, and participated in a dance off. Similar to the preceding round, the contestant with the loudest crowd response was declared the winner. Gautreaux won the contest and received the one hundred dollar prize and a Budweiser bikini. Breitfeller won second place and received approximately thirty dollars ($30).

**The videos.**

Plaintiffs' participation in the contest was captured in video footage created by Paul Prewitt, an independent videographer who was working for his own incorporated business ( Florida Film & Photo, Inc.).[10] Prewitt accumulated a variety of footage in Daytona Beach during spring break 2001, including happenings on the streets, at the beach and at two hotels, including the Desert Inn.

On October 30, 2001, Prewitt sold, transferred and assigned the rights and interest to the spring break 2001footage to  New City Releasing, Inc.  New City then edited and

---

[8](...continued)
in the 1980s and 1990s and was largely based in Miami and other places in Florida. The genre, which has a slightly higher dance tempo and occasional sexually explicit lyrical content, includes groups like 2 Live Crew. See http://en.wikipedia.org/wiki/Bass_music.

[9] According to Plaintiffs, while they were dancing they saw people in the crowd with still cameras and video cameras who were either taking pictures of or videotaping the contest.

[10] At no time was Prewitt an agent for or an employee of Defendants.

compiled the footage into a 55-minute program entitled *Girls Gone Crazy: Spring Break*. New City licensed the pay-per-view rights in the film to iN DEMAND, L.L.C., who made the programming available to paying customers until June 2002.

New City licensed the remaining rights to Lincolnwood Motion Pictures, L.L.C.. In turn, Lincolnwood licensed all rights, except pay-per-view, to Playboy Entertainment Group, Inc., who marketed the same film under the title, *Playboy Exposed: All American Girls*[11] and released the video in February of 2002. Playboy Entertainment Group distributed the video through its domestic distributor, Image Entertainment. Additionally, the video was sold to the public by Trans World Entertainment Corporation, Best Buy Company, Inc., and Playboy.com, Inc.

On July 16, 2002, the law firm of Trenam Kemker sent letters to Playboy Entertainment Group, Image, New City, Lincolnwood, Trans World, Best Buy, and iN DEMAND, informing them that a woman depicted in the wet t-shirt contest in *Playboy Exposed: All American Girls* (Monica S. Pippin), was under the age of 18 at the time of filming. Attached to that letter was a copy of Pippin's birth certificate and a photograph of Pippin.

Upon receipt of the demand letter, Playboy, through its distribution company Image, forwarded a recall notice to its retail accounts, seeking a return of all copies of the video.

---

[11] In addition to the footage shown in *Playboy Exposed: All American Girls*, New City also assembled other programs from the master footage of Prewitt and licensed that footage to Playboy Entertainment Group, which they in turn used to create *Playboy Exposed: Spring Break Greatest Moments* and *Best of*. Plaintiffs' images appear in these videos, and accurately depict Plaintiffs' behavior at during spring break 2001.

Playboy Entertainment Group and New City decided to edit the program to delete Pippin's image and reissued a revised version.

On June 26, 2003, letters were sent on behalf of Plaintiffs to counsel for Playboy Defendants, alleging that Plaintiffs were under 18 when they participated in the contest depicted in *Girls Gone Crazy: Spring Break*, *Playboy Exposed: All American Girls*, *and Playboy Exposed: Spring Break - Best of*, and demanding that Playboy Defendants cease and desist selling the videos. However, the letter did not contain a birth certificate establishing the age of Plaintiffs, nor did it contain photographs of Plaintiffs.

As a result of the making and distribution of these videos, Plaintiffs filed this lawsuit.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences

in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. LEGAL ANALYSIS

Plaintiffs allege in their Fourth Amended Complaint that Defendants violated 18 U.S.C. §§2252(a) and 2252A(a) (Counts 21-22, 25-26, 29-30, 33-34 ).[12] Plaintiffs also asserts

---

[12] For ease of reference, these counts will be referred to herein as the Child Pornography Counts.

against Defendants a claim for unjust enrichment (Counts 24, 28, 32), and a claim of common law negligence against Time Warner and Cox Communications (Count 35) (Dkt. 201).[13]  As of January 26-27, 2007, the parties have stipulated to dismissing all claims against Defendants except those claims under §§ 2252(a) and 2252A(a) (Dkts. 319, 322).

*Child Pornography Counts.*[14]

In Counts of the Fourth Amended Complaint, Plaintiffs allege that the Playboy Defendants and Time Warner and Cox violated 18 U.S.C. §§ 2252(a)[15] and 2252A(a).[16]  In order to prevail on these claims, Plaintiffs had to establish that Defendants transported, received, distributed and reproduced for distribution video recordings knowing, at the time of the transport, receipt distribution or reproduction, that said video recordings contained sexually explicit images of minors.[17]

---

[13] In light of the stipulation for dismissal as to this count, Time Warner and Cox's Motion to Dismiss (Dkt. 240) is **denied as moot**.

[14] The Eleventh Circuit has determined that Section 2252A(a)(3)(B) is unconstitutionally overbroad and violates the First Amendment.  See United States v. Williams, 444 F.3d 1286, 1305 (11th Cir. 2006) (finding "the provision abridges the freedom to engage in a substantial amount of lawful speech in relation to its legitimate sweep, and the reasons the Government offers . . . have not justification in the Supreme Court's First Amendment precedents.").  To the extent Plaintiffs' allegations against Defendants encompass this provision of the statute, Defendants' Motion for Summary judgment as to this claim is **granted**.

[15] Section 2252(a) makes it illegal for any person to knowingly transport or ship, receive, distribute or reproduce for distribution any visual depiction of a minor engaging in sexually explicit conduct.  See 18 U.S.C. § 2252(a) (2005).

[16] Section 2252A(a) makes it illegal for any person to knowingly mail, transport, receive, distribute or reproduce for distribution any child pornography.  See 18 U.S.C. § 2252A(a) (2005).

[17] The scienter requirement applies to both the transport, receipt, production, or distribution of the sexually explicit material and the age of the performers.  See United States v. X-Citement
(continued...)

   A. Plaintiffs are no longer minors.

Defendants argue summary judgment is appropriate because at the time they obtained and distributed the footage of Plaintiffs, both Plaintiffs were over the age of eighteen (18). Specifically, Defendants argue that Section 2255(a) provides a civil remedy for "any minor" who is a victim of the various statutory provisions, including Sections 2252(a) and 2252A. As Plaintiffs were not minors at the time the videos were distributed, they, according to Defendants, do not have a cause of action against Defendants for any alleged violation of §§2252(a) or 2252A. The Court finds no merit to this argument.

Sections 2252(a) and 2252A(a) base liability on the video *depiction* of a minor, not the age of the Plaintiff at the time of distribution. See 18 U.S.C. §§ 2252(a); 2252A (2005). Additionally, §2255(b) provides a six (6) year statute of limitations after the right of action first accrues. See §2255(b) (2005). If this Court were to accept Defendants' argument, one could video tape a five year old child having sexual intercourse, wait until the child turned eighteen, and then distribute the video without liability under the statute. This clearly was not the intent of Congress, and this Court will not read such an intent into the statute.

   B. Defendants' knowledge.

Plaintiffs argue that Defendants had actual knowledge of their ages on three separate occasions, in March 2001, at the time Prewitt collected the video footage, upon receipt of Trenam Kemker's letter in 2002, and again in 2003 when Plaintiffs' lawyers sent a letter

---

[17](...continued)
Video, Inc.,et al, 513 U.S. 64, 78 (1994). .

informing Defendants their videos contained minors.

                1.      March 2001.

Plaintiffs concede that Defendants did not have actual knowledge of Plaintiffs' ages in March 2001. However, they assert that liability should still be found because Defendants decided to remain "willfully and intentionally ignorant of Plaintiffs' ages." (Dkt. 275 at 34). Specifically, Plaintiffs opine that because Prewitt's videos contained sexually explicit conduct and he failed to obtain identification or age records from the individuals shown in the video, as required by §2257,[18] that Playboy Defendants knew or should have known that the video footage collected by Prewitt could have contained images of minors, and chose to remain ignorant as to Plaintiffs' ages when they failed to obtain verification of the performers' ages prior to distributing the videos containing Plaintiffs' images. Plaintiffs provide no legal authority to support their position that liability under the statute can be based on negligence or mere inadvertence.

Clearly, had Congress intended §2257 to apply to those persons or entities that were not involved in the initial production of the "sexually explicit" videos, it would have included this distinction in the section's statutory language. To the contrary, §2257 specifically states that the term "produces" **does not** include "mere distribution or any other activity which does not involve hiring, contracting for [,] managing, or otherwise arranging for the participation of the performers depicted." 18 U.S.C. §2257(h)(3) (2005). As Plaintiffs have presented no

---

[18] Section 2257 requires any person or entity who produces a book, magazine, periodical, film, videotape, or other matter which contains sexually explicit conduct to create and maintain records for every performer containing the performers name and date of birth. See 18 U.S.C. §2257 (2005).

evidence that Defendants hired, managed or arranged Plaintiffs participation in either the contest, or the videos at issue, this argument fails.

2.  July 2002.

Plaintiffs also argue that Defendants had actual knowledge upon receipt of Trenam Kemker's letter in which Monica Pippin's attorney informed them that the Prewitt Tapes and *Playboy Exposed: All American Girls* contained images of Pippin, who, at the time, was under eighteen. In their Motion, Defendants argue that upon receiving notice about Pippin's inclusion in the videos, they immediately recalled all videos which included footage from spring break 2001, and eliminated Pippin's image prior to reissuing the videos. According to Plaintiffs, Trenam's letter put Defendants on notice that the videos contained child pornography and by failing to determine whether any other minors' images were contained in the videos, they were in violation of the statute. This Court finds Plaintiffs' argument without merit.

As stated, Section 2252A(a) makes it illegal for a person to distribute material knowing said material contains child pornography. After receiving the letter from Trenam, Defendants recalled all videos of spring break 2001 and eliminated from the video the image of the only person they know to be under eighteen. Plaintiffs have not presented any evidence that, after recalling the videos and removing Pippen's image, Defendants distributed the videos with actual knowledge that the videos still contained child pornography. Further, inDEMAND did not air *Girls Gone Crazy: Spring Break* after June 2002, one month prior to Trenam's letter. Plaintiffs have presented no evidence to the contrary.

        3.      June 2003.

Finally, Plaintiffs contend that Defendants had actual knowledge as of June 2003 when Plaintiffs' attorney forwarded a letter to Defendants indicating that the videos at issue contained images of Plaintiffs when they were under the age of eighteen. While Defendants do not dispute the receipt of this notice, they argue that, unlike the letter sent by Trenam, Plaintiffs' letter contained no picture identification of the Plaintiffs, and no birth certificate evidencing their date of birth. The issue of knowledge is questionable under the circumstances as it is arguable that Defendants, upon receipt of only a letter, were not in *actual* knowledge. A letter, which includes neither the picture nor the birth date of the alleged minors, would not impart actual knowledge that the videos at issue contained minors.[19] But the letters placed Defendants on inquiry notice, meaning that Defendants, upon receipt of the letter, could be held liable if they did not inquire further in a reasonable amount of time as to the identity of the alleged minors and take appropriate remedial steps. Whether Defendants' response was timely and reasonable is ultimately a question for a jury.

If the jury determines Defendants had inquiry notice upon receipt of the 2003 letters, it must then determine if Defendants, within a reasonable time, conducted a reasonable investigation to determine the identity of the alleged minors and, whether, after this reasonable investigation, they took corrective action. While Plaintiffs have presented evidence that Defendants distributed the videos at issue after 2003, knowledge is imputed to

---

[19] To impute liability on Defendants based on these facts flies in the face of reason and common sense. If such were the case, Defendants would be held liable for any letters they received alleging the existence of minors in videos, even if the letter came from unscrupulous competitors.

Defendants only if the jury determines that Defendants had inquiry notice at the time these videos were distributed and failed to take corrective action within a reasonable time. However, irrespective of whether a jury finds knowledge on the part of Defendants, to be held liable under the statutes the videos at issue have to depict minors engaging in sexually explicit conduct.

        C.    "Sexually Explicit Conduct."

"Sexually explicit conduct" is defined as "[a]ctual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person." See 18 U.S.C. § 2256(2)(2006). In reviewing the videos at issue, it does not appear that Plaintiffs engaged in actual or simulated sexual intercourse, bestiality, masturbation,[20] or sadistic or masochistic abuse. A question is presented, however, whether Plaintiffs lasciviously exhibited their genitals or pubic area during the contest.

The term "lascivious exhibition"[21] is not defined in the statute and, while the Eleventh Circuit has yet to provide a definition, the Third Circuit has defined the term as "a depiction which displays or brings forth to view in order to attract notice to the genital or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer." United States

---

[20]Despite Plaintiffs' arguments to the contrary, the behavior engaged in does not meet the definition of masturbation.

[21]*Black's Law Dictionary* defines lascivious as conduct "tending to excite lust; lewd; indecent; obscene. See Black's Law Dictionary, 886 (7th ed. 1999).

v. Knox, 32 F. 3d 733, 745 (3rd Cir. 1994).   According to the Third Circuit, a requirement of nudity is unnecessary to determine whether conduct falls under the definition of lascivious exhibition. See id..   It is clear from the record that Plaintiffs' genital areas are clothed by a bikini bottom, the videos do, at times, focus on their clothed genital area while Plaintiffs are dancing in the contest.  However, whether Plaintiffs' behavior and the display of their genital area during the video constitutes lascivious exhibition is an inquiry best left to the finder of fact. See id. at 747.

It is therefore ORDERED AND ADJUDGED that the Playboy Defendants' (hereinafter "Playboy") Motion for Summary Final Judgment (Dkt. 232) and Defendants Time Warner Entertainment-Advance/Newhouse Partnership and Cox Communications, Inc.'s Motion for Summary Judgment (Dkt. 272) are **DENIED** for the reasons stated herein.

**DONE** and **ORDERED** in Tampa, Florida on January 29, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\PLAYBOY\Motion for Summary Judgment -Playboy.wpd