UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NICOLE BREITFELLER, et al.,**

    **Plaintiffs,**

v.                                                                    Case No.  8:05-cv-405-T-30TGW

**PLAYBOY ENTERTAINMENT GROUP,
INC., et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants BV& BK Productions LLLP (hereinafter "BV&BK") and Chad Ciani's (hereinafter "Ciani") (hereinafter collectively "Defendants") Dispositive Motion for Summary Judgment (Dkt. 270), and Plaintiffs' Responses in Opposition to the same (Dkt. 311).  For the following reasons, this Court finds Defendants' Motions should be **GRANTED in part and DENIED in part**.

### FACTUAL BACKGROUND[1]

Plaintiffs, in the early part of March 2001, traveled to Daytona Beach to enjoy their spring break from high school.  At the time of their trip, Plaintiffs were seventeen years of age (nearly eighteen).[2]

---

[1] With some exceptions, Plaintiffs do not dispute the accuracy of the facts presented by Defendants (Dkt. 311). Accordingly, those facts contained in this Order are undisputed.

[2] Plaintiff Gautreaux's eighteenth birthday was March 21, 2001, while Plaintiff Brietfeller's eighteenth birthday was September 11, 2001.

**Plaintiff Breitfeller's trip to Daytona**.

Plaintiff Breitfeller drove to Daytona by herself on a Sunday afternoon and stayed in a hotel room she shared with four other young women. On Monday, Breitfeller and the other young women visited the Desert Inn to watch the wet t- shirt contest, which started at 4:00 pm. According to Breitfeller, the wet t- shirt contest was the "thing to do" in Daytona during spring break. (Breitfeller depo. at 70). The contest lasted for one hour and while there, Breitfeller witnessed people videotaping the contest.

The next day, Breitfeller and friends drank alcohol in their hotel room[3] and joked about entering the wet t-shirt contest at the Desert Inn. After drinking in their hotel room, Breitfeller and her friends traveled to the Desert Inn to see the wet t-shirt contest. Once they arrived, Breitfeller saw two of her friends (Tamika Badillo and Paulina Campos) participating in the contest. Initially apprehensive about participating, upon being encouraged by her friends to do so, Breitfeller decided to enter the contest.

**Plaintiff Gautreaux's trip to Daytona.**

Plaintiff Gautreuax traveled to Daytona with two of her friends and shared a hotel room with three other women. On the second day of her trip, while walking on the beach, a young man, with no connection to any of the Defendants in this case, approached Gautreaux, told her about the wet t-shirt contest, commented on her attractiveness, indicated there was a one hundred dollar ($100.00) prize and suggested she enter. Subsequent to this

---

[3]According to Breitfeller, she and her friends took shots prior to leaving the hotel and continued drinking after they arrived at the Desert Inn. Breitfeller and her friends "did a lot of [their] drinking at the Desert Inn." (Breitfeller Depo. at 74).

conversation, Gautreaux walked to the Desert Inn and asked the VJ[4] when the wet t-shirt contest was to begin. The VJ informed Gautreaux the contest would begin in one hour and suggested she come back. Gautreaux decided to enter the contest and returned an hour later.

**The contest.**

After deciding to enter the contest, Plaintiffs reported backstage to prepare. Once backstage, the emcee distributed white cotton t-shirts for the contestants to wear and instructed the contestants to cut off the bottom half of their t-shirts. According to Plaintiffs, the emcee cut the t-shirts for them. While backstage, Breitfeller and her friends asked the emcee for more drinks and were provided large mugs of beer and mixed drinks which Breitfeller and her friends shared. Gautreaux also began consuming beer backstage.[5]

When the contests began, 10 to 15 women, including Plaintiffs, walked on stage and waited for the contest to begin. The DJ began "getting the crowd[6] hyped up," and started

---

[4]While the term VJ is not defined in the Motion, this Court presumes VJ is synonymous with DJ or disc jockey.

[5]Gautreaux did not consume any alcoholic beverages prior to participating in the contest, but recalls consuming one mug of beer backstage and another mug of beer on stage while participating in the contest. (Gatureaux depo. at 32)

[6]The crowd included those persons standing on the pool deck, hotel balconies and the public beach and had full view of the stage on which the contest was taking place. According to Gautreaux, there were "a couple hundred people" watching the contest. (Gautreaux depo. at 43).

playing "booty music"[7] while the contestants began to dance.[8] To determine the winner, the emcee placed his hand above each contestant's head and awaited the crowd's response for that particular contestant. The three contestants with the loudest crowd response were considered the finalists and advanced to the final round, while the other contestants were eliminated. Plaintiffs, along with one other contestant, advanced to the final round, and participated in a dance off. Similar to the preceding round, the contestant with the loudest crowd response was declared the winner. Gautreaux won the contest and received the one hundred dollar prize and a Budweiser bikini. Breitfeller won second place and received approximately thirty dollars ($30).

### BV&BK and Chad Ciani.

BV&BK, an Internet website company, was started by Ciani and his partner, Jason Maskel in 2002 (Dkt. 272, Ex. 2 at 6,8). Prior to the formation of BV&BK, Ciani operated the website, *bikinivoyer.com*, on which he posted photographs of women he had taken during his trips to Daytona Beach. BV&BK owns *bikinivoyer.com* as well as many other websites, and provides subscribers access to pictures and video images documenting various public events such as spring break activities, wet t-shirt contests, bikini contests and other events. BV&BK does not, however, sell the footage on videos or DVDs; all images must be viewed

---

[7] "Booty music" also known as Miami bass, is a type of hip hop music that became popular in the 1980s and 1990s and was largely based in Miami and other places in Florida. The genre, which has a slightly higher dance tempo and occasional sexually explicit lyrical content, includes groups like 2 Live Crew. See http://en.wikipedia.org/wiki/Bass_music.

[8] According to Plaintiffs, while they were dancing they saw people in the crowd with still cameras and video cameras who were either taking pictures of or videotaping the contest.

on its website(s).

In 2001, Ciani was in Daytona Beach for spring break. While on the beach near Desert Inn, he heard an announcement over a loud speaker advertising the wet t-shirt contest. Ciani decided to go to the hotel to watch the contest, and on arriving at the hotel, positioned himself on the second deck of the Desert Inn. The second deck was approximately 20 feet above the stage and 50 to 60 feet away from where the wet t-shirt contest was to take place. From this location, Ciani was able to view the wet t-shirt contest and take photographs. At no time did he speak with any of the contestants, including Plaintiffs.

In April 2001, Ciani posted on his website the photographs he took from spring break 2001, including the wet t-shirt contests. He also posted video footage he obtained from Defendant Michael Weitz of the various events taking place at the Desert Inn during spring break 2001. Plaintiffs' images were displayed on the website. As a result, Plaintiffs filed this lawsuit.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.   LEGAL ANALYSIS**

Plaintiffs allege in their Fourth Amended Complaint that Defendants violated 18 U.S.C. §§§2251(a), 2252(a) and 2252A(a) (Counts 16-18).[9] All other claims against these Defendants have been dismissed by stipulation (Dkt. 317).

   A.   *Count 16 - violation of Section 2251(a).*

Section 2251(a) of United States Code 18, entitled *Sexual Exploitation of Children*, reads in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished . . . if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed . . . or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

See 18 U.S.C. § 2251(a) (2006).

In Count 16 of the Fourth Amended Complaint, Plaintiffs allege that Defendants violated 18 U.S.C. § 2251(a) when they, and their agents, persuaded, induced and enticed Plaintiffs to participate in the contests and to engage in sexually explicit conduct by orally encouraging Plaintiffs. (Dkt. 201). In order to establish liability, Plaintiffs had to present evidence that Defendants (1) employed, used, persuaded Plaintiffs, (2) to engage in sexually explicit conduct, (3) for the purpose of producing any visual depiction of the conduct. See

---

[9]Counts 16 to 18 are also against Defendants Michael Weitz and Jason Maskell. However, neither Defendant has filed a Motion for Summary Judgment.

id. In their Motion, Defendants argue that summary judgment is appropriate because there is no record evidence to support Plaintiffs' allegations. This Court agrees.

Plaintiffs have presented no evidence that either Defendant induced them in any way.[10] First, both Plaintiffs have admitted that their decision to participate in the contest was either motivated by peer pressure from their friends (Breitfeller depo. at 73), or a decision they made on their own (Gautreaux depo. at 248-49).[11] In fact, Ciani testified that he never talked to any of the contestants. While Ciani did testify that he participated in the yelling and cheering of the crowd (Ciani February 22, 2006 depo. at 105), he stated that he never yelled anything to encourage the contestants to engage in any type of behavior. Id. at 105. Plaintiffs have no evidence to the contrary. They have presented no evidence they had any conversations with Ciani prior to entering the contest, or while they were participating in the contest. Ciani's behavior is insufficient to trigger liability under the statute. Accordingly, summary judgment as to Count 16 is **granted**.

---

[10] Plaintiffs also argue that Defendants conspired with GoldRush employees to induce their participation in the wet t-shirt contest. However, Plaintiffs have provided no substantive evidence to support this argument. The references and citations to David Barton's deposition testimony as evidence of a conspiracy are not indicia of the same.

[11] Gautreaux also testified that she entered the contest for the one hundred dollar cash prize (Gautreaux depo. at 30). Plaintiffs have presented no evidence that either BV&BK or Ciani was responsible for providing the one hundred dollars.

*B.     Counts 17 and 18 violation of Sections 2252(a) and 2252A(a).*

In Counts 17 and 18 of the Fourth Amended Complaint, Plaintiffs allege that Defendants violated 18 U.S.C. §§ 2252(a)[12] and 2252A(a).[13] In order to prevail on these claims, Plaintiffs have to establish that Defendants transported, received, distributed and reproduced for distribution a visual depiction knowing, at the time of the transport, receipt distribution or reproduction, that said depiction contained sexually explicit images of minors.[14]

Plaintiffs argue that Defendants had actual knowledge of their ages at the time they were served with the Complaint in <u>Badillo v. Playboy Entertainment Group, Inc., et al</u>, Case. No: 8:04-cv-591-T-30TBM, i.e. March 31, 2004.[15] Defendants do not contest this fact, and state that three to four months after being served, Ciani removed a portion of the spring break 2001 content from the website (Ciani February 22, 2006 depo. at 49-50). The remaining content was removed some time during the following year. Three months would be a reasonable time to identify and remove pictures of minors, but the record does not reveal

---

[12] Section 2252(a) makes it illegal for any person to knowingly transport or ship, receive, distribute or reproduce for distribution any visual depiction of a minor engaging in sexually explicit conduct. <u>See</u> 18 U.S.C. § 2252(a) (2005).

[13] Section 2252A(a) makes it illegal for any person to knowingly mail, transport, receive, distribute or reproduce for distribution any child pornography. <u>See</u> 18 U.S.C. § 2252A(a) (2005).

[14] The scienter requirement applies to both the transport, receipt, production, or distribution of the sexually explicit material <u>and</u> the age of the performers. <u>See</u> <u>United States v. X-Citement Video, Inc.,et al</u>, 513 U.S. 64, 78 (1994).

[15] Plaintiffs also argue that Defendants should have known Plaintiffs' were underage because their youth should have been obvious based on their appearance. However, no reasonable juror could conclude that the were obviously minors.

which pictures of Plaintiffs were removed or when. Id. at 50. While this Court considers the removal of the images three to four months after receiving the Complaint was reasonable, he has failed to identify what specific images were removed during that period. If Defendants had presented evidence that the images removed during the three to four month period were all of the depictions of Plaintiffs, then summary judgment as to these claims would be appropriate. However, no exhibits or affidavits were attached to the Motion for Summary Judgment, nor is there any testimony from Ciani specifically describing the images he removed from the website. Absent such information, this Court cannot grant summary judgment as to these claims.

It is therefore ORDERED AND ADJUDGED that Defendants BV& BK Productions LLLP (hereinafter "BV&BK") and Chad Ciani's Dispositive Motion for Summary Judgment (Dkt. 270) is **GRANTED in part and DENIED in part** for the reasons stated herein.

**DONE** and **ORDERED** in Tampa, Florida on February 6, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\PLAYBOY\Motion for Summary Judgment -BV&BKwpd.wpd